In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 11-8029, 12-8030

LARRY BUTLER, *et al.*, individually and on behalf of all others
 similarly situated,

*Plaintiffs-Appellants, Cross-Appellees*,

*v.*

SEARS, ROEBUCK AND CO.,

*Defendant-Appellee, Cross-Appellant*.

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 06 C 07023, 07 C 00412, 08 C 01832 —
**Sharon Johnson Coleman**, *Judge*.

On Remand from the Supreme Court of the
United States, No. 12-1067

SUBMITTED JULY 8, 2013 — DECIDED AUGUST 22, 2013

Before POSNER, RIPPLE, AND HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. The Supreme Court has vacated
our judgment in this class action suit (reported at 702 F.3d

359 (7th Cir. 2012)) and remanded the case to us for reconsideration in light of *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). *Sears, Roebuck & Co. v. Butler*, 133 S. Ct. 2768 (2013) (mem.).

This suit, a diversity suit based on the breach-of-warranty laws of six states, is really two class actions because the classes have different members and different claims, though both arise from alleged defects in Kenmore-brand Sears washing machines sold in overlapping periods beginning in 2001 and 2004. One class action complains of a defect that causes mold (the "mold claim"), the other of a defect that stops the machine inopportunely (the "control-unit claim"). The district court denied certification of the class complaining about the defect that causes mold and granted certification of the class complaining about the defect that causes the sudden stoppage. The plaintiffs asked us to reverse the denial, and we did so; Sears asked us to reverse the grant, and we refused.

Sears asks us to remand the case to the district court for a fresh ruling on certification in light of *Comcast*, or alternatively to deny certification in both class actions. The plaintiffs ask us to reinstate our judgment, granting certification in both.

Sears' request for a remand to the district court is based to a significant degree on new evidence that has come to light since the district court ruled on certification in September 2011. But the case remains pending in the district court, and, as Sears itself emphasizes, rulings on certification in class action suits are tentative and can be revisited by the district court as changed circumstances require. Fed. R. Civ. P. 23(c)(1)(C); Advisory Committee Notes to 1966 Amend-

ment of Rule 23(c)(1); *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1202 n. 9 (2013); *Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F.3d 364, 370 (7th Cir. 2012). What could it mean to remand a case to a court before which the case is pending?

The question presented by the Supreme Court's remand is one of law—whether the *Comcast* decision cut the ground out from under our decision ordering that the two classes be certified. There is no point in delaying our decision on remand to await consideration by the district court of factual issues that may be moot on the basis of the *Comcast* decision.

The claim in the mold class action is that because of the low volume and temperature of the water in the front-loading machines compared to its volume and temperature in the traditional top-loading machines, they don't clean themselves adequately and as a result mold accumulates that emits bad odors. Traditional household cleaners do not eliminate the molds or the odors. Roughly 200,000 of these Kenmore-brand machines are sold each year and there have been many thousands of complaints of bad odors by the machines' owners.

Sears contends that Whirlpool (the manufacturer of the washing machines) made a number of design modifications, and as a result different models are differently defective; Sears does not contend that any of the design changes eliminated the odor problem, only that they diminished it. The basic question presented by the mold claim—are the machines defective in permitting mold to accumulate and generate noxious odors?—is common to the entire mold class, although damages are likely to vary across class members (the owners of the washing machines). A class action is the

efficient procedure for litigation of a case such as this, a case involving a defect that may have imposed costs on tens of thousands of consumers, yet not a cost to any one of them large enough to justify the expense of an individual suit. A determination of liability could be followed by individual hearings to determine the damages sustained by each class member. The parties probably would agree on a schedule of damages based on the cost of fixing or replacing class members' mold-contaminated washing machines. In that event the hearings would be brief; indeed the case would probably be quickly settled.

We added that if it turned out as the litigation unfolded that there were large differences in the mold problem among the differently designed washing machines, the district judge might decide to create subclasses (and for the further reason that Sears' liability might vary across the states embraced by the class action because of differences among those states' laws), but that this possibility was not an obstacle to certification of a single mold class at the outset.

Sears argued that most members of the plaintiff class had not experienced any mold problem. But if so, we pointed out, that was an argument not for refusing to certify the class but for certifying it and then entering a judgment that would largely exonerate Sears—a course it should welcome, as all class members who did not opt out of the class action would be bound by the judgment.

The second class action involves a computer device that gives instructions to a washing machine's various moving parts. In 2004 the company that supplied these control units in Kenmore washing machines altered its manufacturing process in a way that caused some control units mistakenly

to "believe" that a serious error had occurred and therefore to order the machine to shut down, though actually there had been no error. The plaintiffs allege that Sears knew about the problem yet charged each owner of a defective machine hundreds of dollars to repair the central control unit, and that after the defect was corrected in 2005, Sears continued to ship machines containing the earlier-manufactured, defective units.

The principal issue in the control-unit class action is whether the control unit is indeed defective. The only individual issues concern the amount of harm to particular class members, and we pointed out that it was more efficient for the principal issue—common to all class members—to be resolved in a single proceeding than for it to be litigated separately in hundreds of different trials. But we added that, as with the mold class action, the district court would want to consider whether to create different subclasses of the control unit class for the different states because of different state laws.

So how does the Supreme Court's *Comcast* decision bear on the rulings, just summarized, in our first decision?

*Comcast* holds that a damages suit cannot be certified to proceed as a class action unless the damages sought are the result of the class-wide *injury* that the suit alleges. *Comcast* was an antitrust suit, and the Court said that "if [the plaintiffs] prevail on their claims, they would be entitled only to damages resulting from reduced overbuilder competition, since that is the only theory of antitrust impact accepted for class-action treatment by the District Court. It follows that a model purporting to serve as evidence of damages in this class action must measure only those damages attributable

to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." 133 S. Ct. at 1433. "[A] methodology that identifies damages *that are not the result of the wrong*" is an impermissible basis for calculating class-wide damages. *Id*. at 1434 (emphasis added). "For all we know, cable subscribers in Gloucester County may have been overcharged because of petitioners' alleged elimination of satellite competition (*a theory of liability that is not capable of classwide proof*)." *Id*. (emphasis added). And on the next page of its opinion the Court quotes approvingly from Federal Judicial Center, *Reference Manual on Scientific Evidence* 432 (3d ed. 2011), that "the first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*." (emphasis the Court's). None of the parties had even challenged the district court's ruling that class certification required "that the damages resulting from…[the antitrust violation] were measurable 'on a class-wide basis' through use of a 'common methodology.'" 133 S. Ct. at 1430.

Unlike the situation in *Comcast*, there is no possibility in this case that damages could be attributed to acts of the defendants that are not challenged on a class-wide basis; all members of the mold class attribute their damages to mold and all members of the control-unit class to a defect in the control unit.

Sears argues that *Comcast* rejects the notion that efficiency is a proper basis for class certification, and thus rejects our statement that "predominance" of issues common to the entire class, a requirement of a damages class action under Rule 23(b)(3), "is a question of efficiency." 702 F.3d at 362.

But in support of its argument Sears cites only the statement in the *dissenting* opinion in *Comcast* that "economies of time and expense" favor class certification, 133 S. Ct. at 1437—a statement that the majority opinion does not contradict. Sears is wrong to think that anything a dissenting opinion approves of the majority *must* disapprove of.

Sears compares the design changes that may have affected the severity of the mold problem to the different antitrust liability theories in *Comcast*. But it was not the existence of multiple theories in that case that precluded class certification; it was the plaintiffs' failure to base all the damages they sought on the antitrust impact—the injury—of which the plaintiffs were complaining. In contrast, any buyer of a Kenmore washing machine who experienced a mold problem was harmed by a breach of warranty alleged in the complaint.

Furthermore and fundamentally, the district court in our case, unlike *Comcast*, neither was asked to decide nor did decide whether to determine damages on a class-wide basis. As we explained in *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491–92 (7th Cir. 2012), distinguishing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), a class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed. See Advisory Committee Notes to 1966 Amendment of Rule 23(b)(3); *Pella Corp. v. Saltzman*, 606 F.3d 391, 393–94 (7th Cir. 2010) (per curiam).

But if we are right that this is a very different case from *Comcast*, why did the Supreme Court remand the case to us for reconsideration in light of that decision? The answer must lie in the emphasis that the majority opinion places on the requirement of predominance and on its having to be satisfied by proof presented at the class certification stage rather than deferred to later stages in the litigation. See 133 S. Ct. at 1432–33. The Court doesn't want a class action suit to drag on for years with the parties and the district judge trying to figure out whether it should have been certified. Because the class in *Comcast* was (in the view of the majority) seeking damages beyond those flowing from the theory of antitrust injury alleged by the plaintiffs, the possibility loomed that "questions affecting only individual members" of the class would predominate over questions "common to class members," rather than, as Rule 23(b)(3) requires, the reverse.

Sears argued passionately in its petition for certiorari that we had failed to make a sufficiently rigorous inquiry into predominance in allowing the two classes (the mold class and the control-unit class) to be certified. The petition was filed before the Supreme Court issued its decision in *Comcast*, and the Court may have felt that Sears should be allowed to amend its submission in light of *Comcast* and submit its amended argument to us in the first instance.

Sears thinks that predominance is determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance. That's incorrect. An issue "central to the validity of each one of the claims" in a class action, if it can be resolved "in one stroke," can justify class treatment. *Wal-*

*Mart Stores, Inc. v. Dukes*, *supra*, 131 S. Ct. at 2551. That was said in the context of Rule 23(a)(2), the rule that provides that class actions are permissible only when there are issues common to the members of the class (as of course there are in this case). But predominance requires a qualitative assessment too; it is not bean counting. In *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, *supra*, 133 S. Ct. at 1196, the Court said that the requirement of predominance is not satisfied if "individual questions…overwhelm questions common to the class," and in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997), it said that the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." And in *In re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D. 330, 345 (N.D. Ohio 2001), we read that "common issues need only predominate, not outnumber individual issues." Or as we put it in *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 819 (7th Cir. 2012), "Under the district court's approach [which our decision in *Messner* rejected], Rule 23(b)(3) would require not only common evidence and methodology, but also common results for members of the class. That approach would come very close to requiring common proof of damages for class members, which is not required. To put it another way, the district court asked not for a showing of common questions, but for a showing of common answers to those questions. Rule 23(b)(3) does not impose such a heavy burden."

It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages. If the issues of liability are genuinely common issues, and the dam-

ages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits. As we noted in *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004), "the more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class 17 million suits each seeking damages of $15 to $30…. The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30" (emphasis in original). The present case is less extreme: tens of thousands of class members, each seeking damages of a few hundred dollars. But few members of such a class, considering the costs and distraction of litigation, would think so meager a prospect made suing worthwhile.

There is a single, central, common issue of liability: whether the Sears washing machine was defective. Two separate defects are alleged, but remember that this class action is really two class actions. In one the defect alleged involves mold, in the other the control unit. Each defect is central to liability. Complications arise from the design changes and from separate state warranty laws, but can be handled by the creation of subclasses. See, e.g., *Johnson v. Meriter Health Services Employee Retirement Plan*, *supra*, 702 F.3d at 365 (10 subclasses). These are matters for the district judge to consider in the first instance, and Sears will be able to present to her

the evidence it's obtained since the district judge ruled on certification almost two years ago.

One last point. Shortly before our original decision, the Sixth Circuit had upheld the certification of a single mold class in a case identical to this one (the defendant, Whirlpool, was the manufacturer of the defective Kenmore-brand washing machines), except that it did not involve the other claim in our case, the control unit claim. *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 678 F.3d 409 (6th Cir. 2012). Whirlpool sought certiorari, and the Supreme Court granted it, vacated the court of appeals' judgment, and remanded the case, just as in our case. 133 S. Ct. 1722 (2013) (mem.). On remand the Sixth Circuit, denying as we have done the defendant's motion to remand to the district court, and interpreting *Comcast* as we do, concluded that the requirement of predominance had been satisfied. *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, No. 10-4188, 2013 WL 3746205, at *2, *16–19 (6th Cir. July 18, 2013). The concordance in reasoning and result of our decision and the Sixth Circuit's decision averts an intercircuit conflict.

Our judgment of November 13, 2012, is hereby reinstated.